JIM YOUNGBLOOD V. STATE

No. 27,803. November 16, 1955

*J. Elwood Winters,* Fort Worth, for appellant.

*Sam Cleveland,* District Attorney, Stephenville, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is assault with intent to murder with malice; the punishment, three years and one day in the penitentiary.

According to the state's testimony, one Forbus and three Corley brothers repaired to the "Deep Elm" on the Saturday night in question; shortly after their arrival they heard noises outside the building indicating that a fight was in progress, and they went outside to witness the entertainment. They observed two strangers engaging in a fistic encounter and the appellant approaching them with a blackjack in his hand. As one of the witnesses put it, "The boy had his back turned against him (the appellant) and he was fighting and I just couldn't see hitting a man in the back of the head with a blackjack"; so he grabbed appellant's hand, retrieved the weapon and put it in his own pocket; whereupon the appellant drew a pistol and pointed it at the man who had disarmed him. At this juncture, another of the four "made a dive" at the appellant in order to again disarm him, and the appellant changed the direction of his aim and shot his second would-be disarmer in the abdomen. In the struggle over the pistol, two further shots were fired, but the appellant was finally relieved of the pistol, and the injured party was taken to the hospital, where he remained unconscious for almost a week. Nothing seems to have been said between the parties prior to or during the difficulty.

What appears to be a portion of a voluntary statement of the appellant was introduced in evidence. Therein, the appellant recounted how he had been drinking whisky for several hours prior to the difficulty, told of having gone outside, where he discovered some men "fussing," and continued, "I think I said we can't have it here, let's break it up . . . "

The appellant was not shown to have been employed at or to have any interest in the Deep Elm on the night in question.

The appellant did not testify or offer any evidence in his behalf.

We have been favored with an extensive brief for the appellant and shall discuss his bills of exception.

Bill of Exception No. 1 complains that he was forced to trial without the services of an attorney of his own choosing. A rather detailed discussion of the record will be required. The

offense occurred on December 11, 1954; he was arrested and made bond the following day. He made no effort to obtain counsel until after the grand jury indicted him on March 9, 1955. After he was indicted, he returned from the state of New Mexico and made another bond and was, on March 17, notified that his case was set for trial on March 25. He then made an effort to employ a firm of attorneys, but they could not agree upon employment. Appellant was again notified on March 24 that his case was set for the following day at 9:00 A.M. The appellant did not appear in court on March 25 until after his bond had been forfeited, and he was re-arrested. The following day he made another bond and was notified that his case would be tried on April 18. Appellant did not make any effort to employ an attorney until April 16 at noon, when he talked with the Honorable Joe Shannon at Fort Worth. Mr. Shannon called the district attorney and was notified that because of the previous bond forfeiture the state would not agree to postpone the case until Mr. Shannon recovered from his illness. When the appellant appeared on April 18, the court ascertained that the appellant was not eligible for a suspended sentence, but offered to appoint an attorney to represent him on the merits. The appellant declined the services of anyone but Mr. Shannon.

This statement clearly demonstrates appellant's lack of diligence in the preparation of his defense. The motion for continuance was properly overruled.

Appellant's remaining bills of exception relate to what he denominates fundamental errors in the charge because of the failure to submit murder without malice, self-defense, and accidental shooting. Among other cases relied upon by the appellant is Villa v. State, 122 Texas Cr. R. 142, 53 S.W. 2d 1023. Recently, in May v. State, 160 Texas Cr. R. 582, 272 S.W. 2d 886, we had a similar contention. There we said:

"Appellant concedes that no objections were leveled to the charge but contends that this case should be reversed even in spite of Article 666, C.C.P., which provides, in part, that 'all objections to the charge and to the refusal or modification of special charges shall be made at the time of the trial.' He cites two cases by this Court in which a reversal was had because of errors in the charge not objected to in the trial below. In Villa v. State, 122 Texas Cr. R. 142, 53 S.W. 2d 1023, two ignorant foreigners, unlearned in court procedure, had plead guilty to assault with intent to murder and then took the stand and testified that they acted in self-defense. We held that the better procedure would have been to have withdrawn the pleas of guilty

and entered a plea of not guilty for them. It would appear from the opinion that the accuseds were without counsel in the trial of their case, and the case was properly one of due process. We would not be inclined to extend the holding in the Villa case."

The appellant in the case at bar did not testify that he acted in self-defense, nor do we think that the issues requested were raised by the evidence.

The judgment is affirmed.